IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DOUGLAS GABLE and NIESHA KING,    *
                                  *
                                  *
     Plaintiffs,                  *
                                  *        CV 423-125
         v.                       *
                                  *
ALAN LUFFMAN and TRU-PAK          *
MOVING SYSTEMS, INC.,             *
                                  *
     Defendants.                  *
                                  *

-----------------

**O R D E R**

-----------------

Before the Court are Defendant Tru-Pak Moving Systems, Inc.'s ("Tru-Pak") motion for summary judgment (Doc. 40) and Tru-Pak's motion for hearing (Doc. 43).  For the following reasons, Tru-Pak's motion for summary judgment is **GRANTED** and Tru-Pak's motion for hearing is **DENIED**.


**I. BACKGROUND**

On April 27, 2021, Alan Luffman was operating a semi-truck owned by Tru-Pak on Interstate 95 in Chatham County, Georgia. (Doc. 40-2, ¶ 1.)  When trying to change lanes, Luffman claims he heard a noise and noticed a vehicle cross in front of his truck and strike Plaintiffs' vehicle.  (Id. ¶ 3.)  Plaintiffs assert he merged into the right lane and struck the back left tire of Simon

Drigger's vehicle, causing Driggers to spin in front of the truck and strike Plaintiffs' vehicle, which then crossed in front of the truck and ended up on the right shoulder (the "Accident"). (Doc. 45-7, ¶ 3.) Luffman panicked after seeing the impact and continued driving until he received a call from a Tru-Pak dispatcher. (Doc. 40-2, ¶ 4.) Luffman admits he caused the Accident. (Id. ¶ 6.)

After the Accident, Luffman received a call from Wally Perkins, Tru-Pak's safety director, who had spoken with the police officer. (Id. ¶ 7.) Luffman claims he asked Mr. Perkins if he needed to return to the scene of the Accident, but Mr. Perkins said the police officer explained there was no need. (Id. ¶¶ 8, 9.) Plaintiffs dispute this fact, as it is supported only by Luffman's own testimony. (Doc. 45-7, ¶ 9.) Mr. Perkins instructed Luffman to come to Tru-Pak's yard for a post-accident drug and alcohol test, which was negative. (Doc. 40-2, ¶¶ 10-11.) Plaintiffs assert the Accident occurred around 6:00 A.M., Luffman took two or two and a half hours to travel to Tru-Pak's headquarters in Conover, North Carolina, and then he underwent drug and alcohol testing around 1:14 P.M. (Doc. 45-7, ¶ 11.)

The responding police officer confirmed in his report that he notified Mr. Perkins about the Accident and asked him to contact Luffman. (Doc. 40-2, ¶ 12.) Mr. Perkins provided the officer video footage of the accident and Luffman's contact information. (Id. ¶ 13.) Luffman spoke with the police officer on the phone

and admitted to causing the accident, panicking, and leaving the scene. (Id. ¶ 14.)  Tru-Pak terminated Luffman after the Accident, but the Parties dispute when this occurred. (Id. ¶ 15; Doc. 45-7, ¶ 15.)

At the time of the Accident, Tru-Pak claims Luffman was an independent contractor, but Plaintiffs argue that, under the statutory employment doctrine, Tru-Pak is liable for the injuries Luffman caused. (Doc. 40-2, ¶ 16; Doc. 45-7, ¶ 16.)  Luffman had driven commercial vehicles for at least four years. (Doc. 40-2, ¶ 17.)  He earned his commercial driver's license ("CDL") in 2017. (Id. ¶ 18.)  The Parties dispute what kind of training Luffman received on how to operate a commercial vehicle. (Id. ¶ 19; Doc. 45-7, ¶ 19.)

Luffman had no points on his CDL license. (Doc. 40-2, ¶ 22.) He received a speeding citation in North Carolina in 2019 or 2020, but received no other moving violations aside from the ones issued from the Accident. (Id. ¶ 23.)  Luffman was also involved in a prior accident in a commercial vehicle when he backed into another semi-truck in a delivery yard. (Id. ¶ 24.)  And in 1996, he was cited with driving while intoxicated in his personal vehicle, but he was never arrested again. (Id. ¶¶ 26, 27.)

Plaintiffs sued Defendants in the State Court of Chatham County, Georgia on April 5, 2023. (Doc. 1-1.)  Defendants removed the case on May 5, 2023, pursuant to 28 U.S.C. §§ 1332, 1441, and

3

1446.  (Doc. 1.)  They assert diversity jurisdiction is satisfied because the amount in controversy is over $75,000, and the Parties are completely diverse.  (<u>Id.</u> ¶¶ 8-9, 16-18.)  Plaintiffs bring five claims: (1) negligence of Luffman based on his failure to operate his truck in a reasonable and safe manner; (2) negligence of TruPak based on their negligent hiring, training, and supervising of Luffman; (3) negligence *per se* of Luffman by moving from his lane into the lane traveled by Plaintiffs; (4) negligence *per se* of Luffman by moving and fleeing the scene after causing the Accident; and (5) attorneys' fees because Defendants acted in bad faith, have been stubbornly litigious, and caused Plaintiffs unnecessary trouble and expense.  (Doc. 1-1, at 3-7.)

Tru-Pak moves for summary judgment on all claims against it. (Doc. 40.)  Plaintiffs filed a brief in opposition (Doc. 45) and Tru-Pak replied in support (Doc. 51).  The Court addresses the Parties' arguments below.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving

party has produced evidence such that a reasonable factfinder could return a verdict in its favor." <u>Waddell v. Valley Forge Dental Assocs., Inc.</u>, 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. <u>Anderson</u>, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, the movant has two options as to how it can carry its initial burden. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The movant may show an absence of evidence to support the nonmovant's case or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. <u>Id.</u>

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Vaughn v. Ret. Sys. Of Ala.</u>, 856 F. App'x 787, 789 (11th Cir. 2021) (citation omitted). The non-

movant must tailor its response to the method by which the movant carries its initial burden. <u>Fitzpatrick</u>, 2 F.3d at 1116-17. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." <u>Id.</u> at 1116. On the other hand, if the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1116-17 (citations omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. <u>See Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided Plaintiffs notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 41.) For that reason, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has

expired, the issues have been thoroughly briefed, and the motion is ripe for consideration.

### III. DISCUSSION

The Court addresses Tru-Pak's arguments for each claim in turn.

**A. Negligence**

First, Tru-Pak moves for summary judgment on Plaintiffs' negligent hiring, training, and supervision claim because Luffman was an independent contractor. (Doc. 40-1, at 8.) It argues Georgia law is well-settled that claims for negligent hiring, training, supervision, and retention do not apply to independent contractors. (Id. (citations omitted).) In the alternative, Tru-Pak argues there is no evidence of similar incidents to prove Tru-Pak knew or should have known Luffman was not suited for employment. (Id. at 10.) Plaintiffs argue there is a genuine dispute of material fact on the negligence claims. (Doc. 45, at 10-19.)

1. Independent Contractor

"[C]laims of negligent hiring, . . . training, and supervision are based on the employer's negligence." ABM Aviation v. Prince, 884 S.E.2d 8, 13 (Ga. Ct. App. 2023) (citation omitted). As to hiring, an "employer has a duty to exercise ordinary care not to hire . . . an employee the employer knew or should have known posed

a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff." Id. (citations omitted).  "To establish a negligent training claim, a plaintiff must demonstrate that inadequate training caused a reasonably foreseeable injury." Id. (citation omitted).  And for negligent supervision, an employer can only be liable "where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." Id. at 14 (citation omitted).

"[T]he general rule in Georgia is that an employer is not liable for the negligent acts of an independent contractor." Wilson v. Guy, 848 S.E.2d 138, 144 (Ga. Ct. App. 2020) (citations omitted).  "[W]hether a person is an employee or an independent contractor is determined by examining whether the employer has assumed the right to control the time, manner, and method of executing the work." Id. at 142 (citations and quotation marks omitted).  "[T]he right to control the manner and method of executing work means the right to tell the employee how he shall go about doing the job in every detail, including what tools he shall use and what procedures he shall follow," and "the right to control the time of doing the job means the right to control the hours of work." Id. (citations and quotation marks omitted).

Tru-Pak argues Luffman signed an independent contractor agreement (the "Agreement") that explicitly stated: "I understand that I am an Independent Contract Driver." (Doc. 40-1, at 9; Doc. 40-7, at 1.) When "the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed the right to control the time, manner and method of executing the work." Miller v. Polk, 872 S.E.2d 754, 760 (Ga. Ct. App. 2022) (citations and internal quotation marks omitted). Thus, Tru-Pak has put forth the presumption of an independent contractor relationship, and the Court must examine the evidence to determine whether there is a genuine dispute of material fact as to whether Tru-Pak assumed the right to control the time, manner, and method of Luffman executing his job.

Plaintiffs argue Luffman was an employee because Tru-Pak provided him a truck and carried and paid for his insurance. (Doc. 45, at 10-11.) However, as Tru-Pak points out, the case Plaintiffs rely on to support this argument is in the hospital-physician context, and Plaintiffs rely on Tru-Pak providing a truck, when that is not a dispositive factor of an employer-employee relationship. (Doc. 51, at 3 (citing Barney v. Peters, No. CV 420-173, 2022 WL 18673310, at *3 (S.D. Ga. Dec. 15, 2022)).) The court in Barney explicitly reasoned that an employer providing an employee equipment suggests an employer-employee relationship, but

"this factor alone would not preclude summary judgment." 2022 WL 18673310, at *3 (citation omitted). Thus, while providing the truck weighs towards finding an employer-employee relationship, it does not decide the issue. As to insurance, Tru-Pak asserts it insured the vehicle, not Luffman. (Doc. 51, at 3.) Plaintiffs cite to no case law to illustrate insuring the truck suggests an employer/employee relationship, so the Court finds this factor is not dispositive either.

To dispute Tru-Pak's contention that Luffman was an independent contractor, Plaintiffs next argue Tru-Pak controlled Luffman's time and how he performed his work because it required him to attend quarterly safety meetings, reprimanded him for driving infractions, and required him to adhere to its policies and procedures. (Doc. 45, at 11.) Tru-Pak argues this is insufficient evidence of an employee relationship, especially in the context of safety topics. (Doc. 51, at 5.) Tru-Pak required its drivers to be safe, on time, and comply with state and federal driving rules and regulations, but it did not control the way those expectations were met. (Id. at 5-6.) Plaintiffs again rely on the Barney decision, which stated an employer's right to impose its will in lieu of the contract's provisions and direct the individual's work step by step indicates an employer-employee relationship. (Doc. 45, at 11-13.) Once again, the Court finds the facts at issue are different. The Agreement stated Luffman

understood "additions or deletions can be made at any time to this contract policy agreement . . . and I will be provided with a new copy to review and understand in a timely manner before signing to determine if I wish to continue with contract or decline." (Doc. 40-7, at 1.) Thus, Tru-Pak left control with Luffman, which points to an independent contractor relationship. Wilson, 848 S.E.2d at 143 ("[T]he very nature of an employer-independent contractor relationship is that the employer lacks the right to control or direct the way in which the independent contractor performs his or her work."). Since any additions to the contract were given to Luffman to review and he was given the choice to accept them or not, this weighs towards finding him to be an independent contractor. Plaintiffs rely on Davis v. Beasley Timber Co., 527 S.E.2d 221, 222-23 (Ga. Ct. App. 1999) to argue that Tru-Pak requiring Luffman to adhere to company policies made him an employee. (Doc. 45, at 11.) As Tru-Pak points out, this case can also be differentiated from the facts at issue. (Doc. 51, at 6.) In Davis, the court found a genuine dispute of material fact as to whether the driver was an independent contractor because the company maintained sufficient control over him, including a company handbook with policies and "Do's and Don'ts." 527 S.E.2d at 222. Here, Tru-Pak provided Luffman a Driver and Safety Handbook (the "Handbook"), but the driver responsibilities stated in the Handbook are very broad and include things like driving in

a safe and efficient manner, loading and unloading in a safe manner, picking up and delivering on time, loading according to vehicle size and weight restrictions, being courteous to the motoring public, and similar instructions.   (Doc. 51-1, at 6.) The Court finds the Handbook's driver responsibilities to be general instructions and not do's and don'ts that show an exercise of control over a driver.   As a result, the Court finds this factor supports Luffman being an independent contractor.

To further dispute Tru-Pak's position, Plaintiffs argue Tru-Pak trained Luffman on how to drive commercial vehicles because he did not have experience before being hired.   (Doc. 45, at 12-13.) They argue this contradicts his Agreement which states: "I understand that any training or procedural instructions I receive from [Tru-Pak] will be strictly related to DOT/FMCSA regulatory requirements[.]"   (Doc. 45, at 13 (quoting Doc. 40-7, at 5).)   Tru-Pak does not dispute it trained Luffman on how to drive a commercial vehicle because he did not have prior experience.   (Doc. 51, at 7.)   But it argues this is not in contravention with his Agreement, and it does not evidence control over Luffman's day to day operations of his vehicle and deliveries.   (Id.)   Tru-Pak argues this is merely general supervision to ensure the ends of the contract shall be substantially met, and it does not destroy the independence of the relationship.   (Id. (citing Grange Indem. Ins. v. BeavEx, Inc., 804 S.E.2d 173, 175 (Ga. Ct. App. 2017)).)

The Court agrees with Tru-Pak.  The evidence shows two drivers affiliated with Tru-Pak trained Luffman on how to drive commercial vehicles because he had no experience.  (Doc. 45-1, 11-12.) However, Plaintiffs cite to no authority, and the Court is unaware of any, that indicates providing initial training for a job illustrates an exercise of control over the driver's day to day operations. As Tru-Pak argues, providing Luffman the general means to complete his job does not destroy the independence of the relationship with Tru-Pak. Grange Indem. Ins., 804 S.E.2d at 175 (citation omitted).  As such, the Court finds initial training provided by Luffman does not create a genuine dispute over his status as an independent contractor.

Finally, Plaintiffs argue Tru-Pak hired an attorney to represent Luffman in the criminal proceedings that resulted from the Accident, suggesting he was an employee, as this was not required under the Agreement. (Doc. 45, at 13.)  Tru-Pak does not dispute it facilitated a criminal defense attorney to represent Luffman after the Accident, but it argues this is unrelated to the determination of him being an independent contractor.  (Doc. 51, at 8.)  The Court again agrees with Tru-Pak.  The fact Tru-Pak helped Luffman with his criminal defense does not create a genuine dispute of material fact about Tru-Pak controlling the time, manner, and method of Luffman executing his job. See Miller, 872 S.E.2d at 760 (citations omitted).  This was a step taken outside

the scope of his job execution, and the evidence shows Tru-Pak terminated Luffman after the Accident as well. (Doc. 40-2, ¶ 15; Doc. 45-7, ¶ 15.) Thus, Tru-Pak providing Luffman an attorney after the accident does not help the Court's analysis of whether Tru-Pak controlled the time, manner, and method of Luffman's job.

Based on the foregoing, the Court finds Tru-Pak put forth evidence to illustrate Luffman was an independent contractor and not an employee of Tru-Pak. Despite Plaintiffs' arguments to the contrary, the Court is not convinced the factors support finding an employer-employee relationship. Since Luffman was an independent contractor, Tru-Pak is not liable for his alleged negligent acts. Wilson, 848 S.E.2d at 144 (citations omitted). Thus, Tru-Pak's motion for summary judgment is **GRANTED** on Count II for Tru-Pak's negligent hiring, training, and supervision of Luffman.

### 2. Negligent Entrustment

Plaintiffs argue a negligent entrustment claim does not require an employer-employee relationship. (Doc. 45, at 13.) Tru-Pak agrees liability under negligent entrustment may arise outside of an employer-employee relationship. (Doc. 51, at 10.) It admits Tru-Pak owned the truck driven by Luffman but argues Plaintiffs have not proven the remaining elements to prove a claim. (Id.) Tru-Pak asserts Plaintiffs failed to offer evidence of negligent entrustment. (Id.) Plaintiffs argue that since Tru-Pak owned the

14

truck Luffman drove, summary judgment should be denied.  (Doc. 45, at 13-14.)

> A negligent entrustment claim requires
>
> a negligent act of the owner in lending his vehicle to another to drive, with actual knowledge that the driver is incompetent or habitually reckless, and this negligence must concur, as a part of the proximate cause, with the negligent conduct of the driver on account of his incompetency and recklessness.

CGL Facility Mgmt., LLC v. Wiley, 760 S.E.2d 251, 256 (Ga. Ct. App. 2014) (citation omitted).  Such a claim requires more than proving Tru-Pak owning the truck, but also requires Plaintiffs to show Tru-Pak entrusted Luffman with the truck while knowing he was incompetent or habitually reckless.  The Court finds Plaintiffs failed to do so.

Tru-Pak argues Luffman's driving history does not demonstrate a "pattern of reckless driving or facts from which such knowledge could be inferred."  (Doc. 51, at 11 (quoting Danforth v. Bulman, 623 S.E.2d 732, 736 (Ga. Ct. App. 2005)).)  Danforth provides that "[t]o avoid summary judgment, a plaintiff who asserts a known habit of recklessness as the basis for liability must show that the owner had actual knowledge of the driver's pattern of reckless driving or facts from which such knowledge could reasonably be inferred."  623 S.E.2d at 736 (citation omitted).  To show a history of careless or reckless driving and raise an issue of fact for the jury, Plaintiffs rely on evidence that Luffman backed into another

vehicle and received speeding tickets.  (Doc. 45, at 17-18.)   In response, Tru-Pak argues Luffman was cited for speeding two years before the Accident and was involved in a backing accident the year before the Accident.  (Doc. 51, at 11.)   The undisputed evidence also shows in 1996, he was cited with driving while intoxicated in his personal vehicle.  (Doc. 40-2, ¶ 26.)  But Tru-Pak argues two prior tickets and a backing accident are not enough to establish Luffman was habitually incompetent or had a habit of recklessness.  (Doc. 51, at 11.)  The Court agrees.

In Danforth, the court found the plaintiff's negligent entrustment claim against a mother failed even though the mother let her son use her car with knowledge of his three prior collisions and a ticket for passing in an illegal zone. 623 S.E.2d 732 at 737.  Reasoning that two of the collisions were minor and the son was not cited for traffic violations, the court found the facts were not sufficient to establish the son's incompetence. Id.  On the other hand, in Smith v. Tommy Roberts Trucking Co., 435 S.E.2d 54, 57 (Ga. Ct. App. 1993), the court found a genuine dispute of material fact as to negligent entrustment when the truck driver had two traffic violations during his employment and several other violations on his record, including a ticket for driving under the influence.  The Court finds Luffman's two tickets and a backing accident are not enough to create a genuine dispute of material fact as to negligent entrustment.  This is more similar

16

to the facts of <u>Danforth</u>, because the prior incidents were relatively minor violations, did not occur during his employment, and do not establish Luffman's incompetence of habitual recklessness.  Further, these prior actions are required to concur as part of the proximate cause, and here, there is no evidence the Accident was caused by poor backing or speeding.  <u>See</u> <u>CGL Facility Mgmt.</u>, 760 S.E.2d at 256 (citation omitted).  Thus, there are no prior incidents that put Tru-Pak on notice that negligent conduct was foreseeable based on Luffman's history.  Based on the above, the Court finds Plaintiffs failed to put forth evidence of Tru-Pak's negligent entrustment to Luffman, so Tru-Pak's motion for summary judgment is **GRANTED** on this claim.

     3. <u>Statutory Employment Doctrine</u>

In response to Tru-Pak's motion for summary judgment, Plaintiffs assert Luffman is an employee under the "statutory employment" doctrine.  (Doc. 45, at 14.)  They argue that even if Luffman was an independent contractor under the Agreement, under federal law for interstate motor carriers, the carriers are responsible for the acts of drivers operating trucks under their names, so the drivers are employees of the carrier.  (<u>Id.</u> at 16.)  Plaintiffs assert that as employees under this doctrine, carriers, like Tru-Pak, are responsible for the acts of their drivers operating trucks under the name of the common carrier.  (<u>Id.</u>)

In response, Tru-Pak argues that Plaintiffs cannot assert this new theory of recovery for the first time in response to the motion for summary judgment. (Doc. 51, at 8.) Tru-Pak is correct. Since this theory of relief was not raised in the Complaint, Plaintiffs are barred from seeking such relief at this stage of litigation. Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (holding that a plaintiff may not raise a new legal claim for the first time in response to a motion for summary judgment). As such, Plaintiffs' attempt to assert liability under the "statutory employment" doctrine is **DENIED.**

## B. Attorneys' Fees

Tru-Pak also moves for summary judgment on Plaintiffs' attorneys' fees claim, arguing there is no evidence of bad faith or stubborn litigiousness. (Doc. 40-1, at 13-16.) Plaintiffs argue there is an issue of fact on whether Tru-Pak acted in bad faith and engaged in stubborn litigiousness. (Doc. 45, at 19-23.)

O.C.G.A. § 13-6-11 provides a plaintiff can recover the expenses of litigation "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." However, a claim under this statute is derivative of a substantive cause of action. Gilmour v. Am. Nat'l Red Cross, 385 F.3d 1318, 1324 (11th Cir. 2004). Since summary judgment is granted on Plaintiffs' substantive claims against Tru-Pak, their request for attorneys' fees cannot

proceed.  Tru-Pak's motion for summary judgment is thus **GRANTED** as to Count V for attorneys' fees.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Tru-Pak's motion for summary judgment (Doc. 40) is **GRANTED**.  The Clerk is **DIRECTED** to **TERMINATE** Tru-Pak as a Party to this action.  Because the Court resolved the motion for summary judgment based on the Parties' briefs, Tru-Pak's motion for hearing (Doc. 43) is **DENIED**. The case shall proceed to trial in due course.

**ORDER ENTERED** at Augusta, Georgia, this 25th day of September, 2024.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA